# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MAURICE DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07 C 4735 |
| ) | |
| JEWISH VOCATIONAL SERVICE and ) | |
| ILLINOIS STATE POLICE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Maurice Davis has sued Jewish Vocational Service (JVS) and Illinois State Police (ISP) for race discrimination in violation of 42 U.S.C. § 1981(a) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). In addition, he has asserted false light and negligence claims against both agencies and claims of defamation and tortious interference with contract against ISP.[1] Defendants have moved for summary judgment on all claims. In response, Davis agrees that he cannot pursue a negligence claim but otherwise opposes defendants' motions. For the reasons set forth below, the Court grants defendants' motions regarding the remaining claims.

## Facts

On a motion for summary judgment, the Court draws "all reasonable inferences

---

[1] Davis' second amended complaint, filed by predecessor counsel, made reference to 42 U.S.C. § 1983 and 42 U.S.C. § 12112, but Davis does not suggest that he has any viable claims under those statutes and thus has abandoned them. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005).

from undisputed facts in favor of the nonmoving party and [views] the disputed evidence in the light most favorable to the nonmoving party." *Harney v. Speedway Super-America, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

Davis is African-American and suffers from traumatic brain injury. He was a client of an organization called EZRA, which referred him to Maurice Hamp, an employment placement specialist at JVS, to assist him in finding a job. JVS, a nonprofit and social services agency, has a rehabilitation division that provides skills training and employment services to persons with disabilities. Hamp met with Davis on August 15, 2005 and determined that his job skills were insufficient to place him in "competitive employment" (*i.e.,* jobs offered to the general public). Hamp referred Davis to the Illinois Department of Human Services (IDHS) Division of Rehabilitation Services (DRS) with a recommendation to refer him to the JVS Community Based Services (CBS) Janitorial Services Training program (JST). Participants of the CBS JST program must be referred to JVS by IDHS, and they are required to have mental, developmental and/or physical disabilities.

The CBS JST program helps individuals with disabilities gain the skills they need to enter the competitive workforce. To support the program, JVS contracted with various sites to perform janitorial services. Among the sites participating in the program is ISP's headquarters facility located in Des Plaines, Illinois. The contract between ISP and JVS provided that ISP "may conduct criminal and driver history background checks of Vendor's [JVS'] officers, employees or agents who would directly supervise or physically perform any of the Contract requirements at State facilities. Any officer, employee or agent deemed unsuitable by the State must be replaced immediately."

2

Kaplan Dep., Group Ex. 2 at 19.

On September 30, 2005, Davis met with his IDHS counselor, Luis Cora, who executed an IDHS DRS "individualized plan for employment," referring Davis to JVS for janitorial training. On November 2, 2005, Davis met with Barbara Hankins, JVS' CBS unit team leader, who completed an initial intake assessment and evaluation plan. Included in the paperwork Davis signed that day was a "Background Check Sign-off Form," authorizing JVS to conduct a criminal record check. Hankins recommended Davis for a two-week janitorial evaluation period and determined that Davis was not capable of obtaining and maintaining a job in competitive employment. Once Davis completed two weeks of in-house training, John Southall, Davis' JVS Vocational Trainer, and Hankins recommended transferring Davis for eight more weeks of training.

Although JVS contends that Davis was assigned to the ISP Des Plaines site for eight weeks of training, Davis disputes that contention and claims that his eight-week training program began November 21, 2005 and ended January 16, 2006. The parties agree, however, that on January 20, 2006, Davis began working at the ISP Des Plaines site and that his JVS case manager at that time was Julia Pagelkopf.[2]

Davis testified that at the time he was at the ISP Des Plaines site, a total of eight JST program participants were assigned to that site, including himself. Of those, three were African-American, four were white, and one was Hispanic. Davis further testified that white JVS janitors were segregated from the others and that they were assigned easier tasks. The parties agree that the tasks of CBS JST participants placed at the

---

[2] Julia Pagelkopf later married and changed her last name to Bernardi.

ISP Des Plaines site were assigned by the JVS on-site vocational trainer, Jurek Gazdowicz.[3]

Roy Sanji, an administrative lieutenant at the ISP Des Plaines site from January 2004 through April 2006, testified that he reviewed a criminal background report for "Maurice Davis" on January 25, 2006. The report listed burglary and assault convictions among other crimes charged or committed by persons named Maurice K. Davis (born August 13, 1960), Maurice N. Davis (born July 14, 1962), and Mauriceles Richard Davis IV (born August 14, 1962). Although the Maurice Davis involved in this case was born on August 14, 1962, Sanji believed all the convictions and charges in the report all belonged to him.

Sanji was concerned about the burglary convictions in particular, and he deemed Davis unsuitable to perform services at the ISP Des Plaines facility. Sanji asked his office associate, Kristine Arnold, to contact Ernie Scarpelli who, as assistant/acting building manager of the ISP Des Plaines site for the Illinois Department of Central Management Services (CMS), monitors ISP's contract with JVS. Sanji testified that he did not describe the nature of the offenses to Arnold but only asked her to advise CMS that Davis could not enter the Des Plaines facility based on his criminal record.

On January 25, 2006, Scarpelli learned from ISP that it deemed Davis unsuitable to work at the Des Plaines site due to his criminal record. Scarpelli also testified that he was not made privy to the details of Davis' criminal background. That same day, Scarpelli informed Eric Kramp, assistant operations director of JVS' CBS program, that

---

[3] Davis agrees that Gazdowicz supervised him at ISP but disputes any contention that Gazdowicz trained him.

Davis could not enter the ISP Des Plaines site due to his criminal record. Kramp testified that Scarpelli did not identify the specific crimes on Davis' record.

On January 26, 2006, Kramp called Pagelkopf and instructed her to call Gazdowicz at the ISP Des Plaines facility and tell him to send Davis home when he arrived at the site. Davis testified that when he arrived to the facility that day, Gazdowicz called him personally, pushed him out the door, and said, "You were found with a bunch of drugs and guns, and you was in prison for four years." Davis Dep. at 194, 206. Davis called Pagelkopf, and she put Kramp on the phone to explain to Davis why he had been dismissed from the site. Davis explained to them that he did not have a felony conviction and had never spent time in prison.

JVS received its own copy of the criminal background report on January 30, 2006. JVS claims it understood from the report that Davis had been convicted only of misdemeanors. JVS also claims it offered to find Davis another placement where his criminal record would not be a problem. Davis contends, however, that JVS would not place him at a job site until he expunged his criminal record. Davis' vocational plan participation, covering the period of February 9, 2006 through May 8, 2006, notes that he "will be referred to placement pending criminal background expungement." Bernardi Dep., Ex. 10. Davis also testified that Hankins and other JVS employees began treating him differently once he was not allowed to return to the ISP Des Plaines facility.

On February 6, 2006, at a meeting attended by Davis, Kramp, Pagelkopf and Arthur Adelberg, JVS' CBS director of operations, Davis learned that JVS does not help CBS JST clients clear up errors or discrepancies in their criminal records or help expunge criminal convictions on their records. Davis was advised to ask EZRA for

5

assistance. On February 7, 2006, Kramp called Hamp and asked if EZRA could assist Davis with his criminal background problem. Hamp arranged to have two fingerprint criminal background checks run by a service at Davis' request on February 11 and February 28, 2006 and gave Davis EZRA checks to pay for those background checks. Hamp spoke to Davis over the phone sometime between February 7 and February 28, 2006 and informed him that EZRA could not help Davis expunge his criminal record. Hamp referred Davis to Cabrini Green Legal Clinic and stated that EZRA would pay the fee.

Though Davis had been barred from the ISP facility, he continued training at JVS from January 26 through May 8, 2006, at the same rate of pay he had received while working at the ISP facility. On May 8, 2006, Kramp and Pagelkopf met with Davis and offered him an opportunity to work at another CBS JST site called the IDHS John J. Madden Mental Health Center (Madden). JVS' contract with Madden prohibited CBS JST participants with felony convictions from the site, but it did not disqualify individuals with misdemeanor convictions. Davis turned down the opportunity, however, because he would have to pay for his own transportation and, without a reduced fare card, the extra transfer would be too costly for him. Furthermore, Davis was interested in focusing on expungement of his criminal record.

Davis did not return to JVS for further CBS JST training after May 8, 2006. He also did not follow up with Pagelkopf to inform her of any progress he had made on expunging his criminal record. JVS prepared a closure/follow up form dated August 9, 2006 listing a discharge date of July 10, 2006 and stating that Davis was "no longer . . . participating in . . . training program" and that "[h]is criminal record hindered any

vocational advancement." Bernardi Dep., Ex. 12.

## Discussion

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**1.      Race discrimination claims**

Davis alleges race discrimination in violation of Title VII and section 1981. Title VII protects individuals from discrimination in the terms or conditions of their employment "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 prohibits racial discrimination in the making and enforcement of contracts. 42 U.S.C. § 1981(a) ("All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as enjoyed by white citizens."); *see also Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996).

Defendants argue that the statute of limitations period has expired for the Title VII claim and that equitable tolling does not apply. Defendants also contend that as a

JVS rehabilitation program participant, Davis was not an employee of either agency, a prerequisite to liability under Title VII. JVS also argues that it never entered into a contract with Davis within the meaning of section 1981. The Court does not reach those issues and instead addresses the merits of Davis' race discrimination claim.

In the Seventh Circuit, "the same *prima facie* requirements [apply] to both Title VII and §1981 discrimination claims." *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007). Davis relies on "the indirect, burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for his [race-based discrimination] claims." *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009). A *prima facie* case under the *McDonnell Douglas* test requires Davis to show that: "(1) he is a member of a protected class; (2) he was qualified for the applicable positions; (3) he suffered an adverse employment action; and (4) similarly-situated persons not in the protected class were treated more favorably." *Id*. If Davis makes out a *prima facie* case, the burden shifts to defendants to articulate a "nondiscriminatory reason for the adverse employment action." *Id.* The burden then shifts back to Davis to show that the nondiscriminatory reason provided by defendants is pretextual. *Id.* "The pretext analysis focuses on whether the [stated] reason [for defendants' action] was honest and not whether it was accurate or wise." *Id.*; *see also Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007). The plaintiff bears the ultimate burden of proving that defendants "intentionally discriminated against him on the basis of his race." *McGowan*, 581 F.3d at 579.

As an African-American, Davis belongs to a protected class. Davis argues he suffered adverse employment action twice – once when he was dismissed from the ISP site and another when he was discharged from the JVS program.[4] The Court also assumes for purposes of discussion that Davis was qualified to participate in the JVS janitorial program.

No reasonable jury could find, however, that Davis has established a *prima facie* case of race-based discrimination. The reason is that he offers no evidence from which a reasonable jury could find that ISP or JVS treated similarly situated non-African American workers more favorably. Although Davis claims that JVS gave white men in the janitorial program easier assignments, that does not help him prove his claim of wrongful termination, the only claim of actionable adverse action that he makes.[5] Rather, the wrongful termination claim depends on Davis' argument that he was subjected to disparate treatment in the consideration of his criminal record.

Davis does not identify any non-African-American person in the janitorial program who had any sort of a criminal record, let alone a misdemeanor record similar to his. Davis notes that Sanji only ran three or four background checks and points out that this corresponds with the number of African-Americans and Hispanics in the

---

[4] JVS contends that this Court should not consider any contention that Davis was discriminated against when he was discharged from the JVS program because this was not alleged in his amended complaint. It is unnecessary for the Court to reach that issue, because Davis cannot show that he was discriminated against on the basis of race even under a broader construction of his claims.

[5] In any event, Davis has admitted that the white men in the program suffered from disabilities that were more severe than his own, which would defeat any contention they are similarly situated.

program. Davis asks the Court to infer that ISP must have run criminal background checks only on the workers from minority groups. That, however, is speculative; it is not a reasonable inference. The Court also notes that two persons with criminal records whom Davis claims JVS and ISP treated more favorably, in that they maintained their positions at the ISP site or remained in the JVS program, were, like Davis, African-American. Davis tries to distinguish himself from these persons by stating that unlike them, he was tall. Because that factor is unrelated to his race, however, it does not support a claim under section 1981 or Title VII.

For this reason, Davis cannot make out a *prima facie* case of race discrimination, and defendants are entitled to summary judgment on his Title VII and section 1981 claims.

**2.    False light claim**

Davis asserts a claim for false light invasion of privacy against JVS and ISP. The false light privacy tort requires proof that "(1) the defendant placed the plaintiff in a false light before the public; (2) the false light would be highly offensive to a reasonable person; and (3) the defendant acted with knowledge of or reckless disregard for the falsity of the statements in issue-in other words, with actual malice." *Frobose v. Am. Sav. & Loan Ass'n of Danville*, 152 F.3d 602, 617 (7th Cir. 1998).

Davis cannot maintain a false light claim against ISP because, as a state agency, it is protected by sovereign immunity under the Illinois State Lawsuit Immunity Act. *See* 745 ILCS 5/1; *Richman v. Sheahan*, 270 F.3d 430, 441-42 (7th Cir. 2001) ("If the state law claim is deemed to be against the state, then it must be dismissed.").

Accordingly, ISP is not subject to suit for state tort claims in this Court.

Davis' false light claim against JVS also fails. "A defendant commits this particular privacy tort when he gives publicity to a matter concerning another that places the other in a false light." *Frobose*, 152 F.3d at 617. The Illinois Supreme Court has noted that "the heart of this tort lies in the publicity." *Lovgren v. Citizens First Nat'l Bank of Princeton*, 126 Ill. 2d 411, 418, 534 N.E.2d 987, 989 (1989). In support of his claim, Davis alleges that employees at JVS recklessly informed one another that he had a felony conviction, which was untrue. He contends that under current Illinois precedent, "the element of 'before the public' in an action for false light may be satisfied by establishing that false and highly offensive information was disclosed to a person or persons with whom a plaintiff has a special relationship." *Poulos v. Lutheran Soc. Servs. of Ill., Inc.*, 312 Ill. App. 3d 731, 740, 728 N.E.2d 547, 555 (2000). Because Hankins, Pagelkopf and Adelberg were responsible for his placement, supervision, and participation in the program, Davis claims he shared a special relationship with them of the sort referenced in *Poulos* and similar cases. Davis contends that these JVS employees were informed of his criminal record and that they incorrectly inferred his background included a felony.

Although the Illinois Appellate Court apparently adopted the "special relationship" test in *Poulos*, *see, e.g., Duncan v. Peterson,* 359 Ill. App. 3d 1034, 835 N.E.2d 411 (2005); *Kurczaba v. Pollock,* 318 Ill. App. 3d 686, 742 N.E.2d 425 (2000), the Illinois Supreme Court has yet to decide "[w]hat is sufficient to establish the element of 'before the public' in an action for false light." *Poulos*, 312 Ill. App. 3d at 739; 728 N.E.2d at

11

555. In the absence of a superseding decision by the Illinois Supreme Court, this Court is bound by Seventh Circuit precedent. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("A decision by a state's supreme court terminates the authoritative force of [Seventh Circuit] decisions interpreting state law . . . But decisions of intermediate state courts lack similar force . . . they do not themselves liberate district judges from the force of [Seventh Circuit] decisions.").

In *Frobose*, the Seventh Circuit found that "communications and actions between and among the employees, officers, and directors of the association, who by virtue of their positions would have a natural interest in, if not a responsibility to know about, the matters communicated" do not support a false light claim. *Frobose*, 152 F.3d at 618. Because Davis' only contention is that JVS internally communicated Davis' criminal record, he cannot sustain a false light invasion of privacy claim against the entity.

**3.     Defamation and tortious interference with contract claims**

As previously explained, ISP is not subject to suit on state law claims in federal court. *See* 745 ILCS 5/1; *Richman*, 270 F.3d at 441-42. Davis' defamation and tortious interference with contract claims against ISP thus cannot succeed.

**Conclusion**

For the foregoing reasons, the Court grants defendants' motions for summary judgment [docket nos. 72 & 76]. The Clerk is directed to enter judgment dismissing with prejudice all of plaintiff's claims against Jewish Vocational Services and his race discrimination claim against the Illinois State Police, and dismissing for lack of subject

matter jurisdiction plaintiff's remaining claims against the Illinois State Police.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 17, 2010